IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BAMBI L. SOPP,                          Case No. 6:12-cv-00117-MA

          Plaintiff,                  OPINION AND ORDER

   v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

         Defendant.

JOHN E. HAAPALA
401 E. 10th Avenue, Suite 240
Eugene, OR 97401

S. AMANDA MARSHALL
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

LEISA A. WOLF
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98105-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Bambi L. Sopp brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). For the reasons that follow, I affirm the final decision of the Commissioner.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 3, 2005, plaintiff filed an application for Supplemental Security Income (SSI). Plaintiff alleges disability beginning May 1, 2003, due to chronic back, hip and knee pain, asthma, high blood pressure, arthritis, extreme food allergies, poor eyesight, hand and leg numbness, depression, bronchitis and pneumonia. Following a hearing set for April 4, 2007, at which plaintiff failed to appear, an administrative law judge (ALJ) issued an unfavorable decision on May 15, 2007. Plaintiff requested review, and the Appeals Council remanded the case for further evaluation based upon new evidence that plaintiff submitted indicating she was diagnosed as bipolar and was receiving on-going mental health treatment.

A second hearing was held on March 30, 2010, at which plaintiff appeared with her attorney and testified. A vocational expert, Lynn Jones, and plaintiff's neighbor, Sandy Kinkey, also

2 - OPINION AND ORDER

appeared and testified.  On April 23, 2010, the ALJ issued another unfavorable decision.   The Appeals Council denied plaintiff's request for review on November 21, 2011.   The ALJ's decision therefore became the final decision of the Commissioner for purposes of review.

Plaintiff was 49 years old on the date of her application, and 54 at the time of the second hearing.  Plaintiff has a high school education and a Bachelor's degree in business administration. Plaintiff stopped working in 2003 due to an on-the-job back injury. Plaintiff has past relevant work as a real estate agent and motel maid.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy.  Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since March 3, 2005, the application date. See 20 C.F.R. §§ 416.920(b), 416.971 et seq.

At step two, the ALJ found that plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine, asthma, and bipolar disorder. See 20 C.F.R. § 416.920(c).

At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. See 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform a range of medium work, except due to chronic back pain, she can perform tasks that involve no more than six hours of standing and/or walking, and no more than six hours of sitting in an eight hour day (with normal breaks). The ALJ found that plaintiff must be permitted to sit or stand at will in order to relieve pain or discomfort, and must avoid climbing ladders, ropes and scaffolds, or climbing ramps or stairs. Due to respiratory symptoms attributable to asthma, plaintiff must avoid concentrated exposure to extreme cold or respiratory irritants, such as fumes, odors, dust, or poor ventilation. Due to mental symptoms associated with bipolar disorder, plaintiff may only perform

unskilled or low-level semi-skilled instructions, rather than complex instructions. See 20 C.F.R. §§ 416.927, 416.929.

At step four, the ALJ found that plaintiff is unable to perform any past relevant work. See 20 C.F.R. § 416.965.

At step five, the ALJ found that considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. See 20 C.F.R. §§ 416.969, 416.969(a). The ALJ identified such representative occupations as routine office clerk, appointment clerk, and receptionist. Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff contends that the ALJ made several errors: (1) failing to find her knee impairment severe at Step Two; (2) failing to find that she meets a Listing at Step Three; (3) improperly discrediting her testimony; (4) improperly discrediting the opinion of Ronald Bortman, M.D., her treating physician; and (5) failing to include all of plaintiff's limitations in the RFC, resulting in a defective hypothetical to the VE.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C.

§ 405(g); <u>Andrews</u>, 53 F.3d at 1039. "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Id.</u>; <u>Valentine</u>, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. <u>Batson v. Comm'r of Soc. Security Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004); <u>Andrews</u>, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001); <u>Batson</u>, 359 F.3d at 1193.

## DISCUSSION

### I.  Step Two

Plaintiff argues that the ALJ erred in finding that her knee arthritis is not a severe impairment at Step Two. In the decision, the ALJ discussed that plaintiff's knee pain was attributed to arthritis in January 2004, based on tenderness and a slight decrease in range of motion. The ALJ also discussed that plaintiff's most recent records indicate that she has full range of motion in all extremities with no report of knee pain. The ALJ noted that plaintiff's medical record did not reflect any

significant limitations because of her alleged knee arthritis, and concluded it was non-severe. Plaintiff contends that the Step Two finding is erroneous because it is unclear whether her knee impairment had an effect on plaintiff's ability to perform basic work activities, and therefore the ALJ should have further developed the record.

Plaintiff's argument fails for two reasons. First, the Step Two threshold is low. At Step Two, the ALJ must determine whether a claimant has one or more impairments that significantly limit his or her ability to conduct basic work activities. Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005); 20 C.F.R. §§ 416.920(c), 416.921. In this case, the ALJ resolved Step Two in plaintiff's favor, concluding that plaintiff had demonstrated impairments (degenerative disc disease of the lumbar spine, asthma, and bipolar disorder) necessary to satisfy Step Two. The ALJ continued the sequential decision-making process until reaching a determination at Step Five. Any error in designating plaintiff's knee arthritis as non-severe did not prejudice her at Step Two, as Step Two was resolved in her favor. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007)(any failure to list bursitis as severe at step two was harmless error where ALJ considered functional limitations of bursitis at step four); Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005)(any error in omitting obesity from list of severe

impairments at step two was harmless because step two was resolved in claimant's favor).

Second, I reject plaintiff's argument that the record was inadequate for a determination as to her knee impairment. See Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001)(the ALJ's "duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."). Plaintiff's complaint of knee pain and its alleged functional limitations is based upon her own complaints. To the extent that plaintiff contends the ALJ failed to consider her complaints of an alleged knee impairment and its attendant functional limitations or failed to properly evaluate the medical evidence concerning her alleged knee arthritis, I address those issues below. See 20 C.F.R. § 416.923 (once a claimant has surmounted Step Two, the ALJ must consider the functional limitations imposed by all medically determinable impairments in the remaining steps of the decision).

## II.  **Plaintiff's Credibility**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Tommasetti

v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Carmickle v. Comm'r Soc. Security Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Tommasetti, 533 F.3d at 1039; Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039.

At the March 30, 2010 hearing, plaintiff testified that she is limited by the pain in her knee everyday. Plaintiff described that her knee will swell up and crackle if she bends it. Plaintiff stated that she is in constant pain, and needs to change positions from sitting to standing frequently. Plaintiff stated that due to

her knee and leg pain, she can stand for only 20 minutes, sit for 30 minutes, walk for only three minutes, and can lift five pounds.

Plaintiff also testified that she suffers from chronic asthma, and takes Advair disk twice a day, an Accolade maintenance pill once a day, uses a nebulizer machine several times a week, and a rescue inhaler as needed. Despite severe asthma, plaintiff testified that she smokes four to five cigarettes a day, and last smoked marijuana in 2007.

Plaintiff testified that she suffers tendonitis in both thumbs, which causes burning in her wrists and her fingers to lock up. Plaintiff described chronic back pain, resulting from an on-the-job injury in May of 2003. Plaintiff described her back pain as feeling like there is a "metal rod in my back," causing constant pain, which she rates as a nine or 10 on a 10-point scale. Plaintiff said her back pain prevents her from bending, stooping, or crawling, and causes her to wake from sleeping four or five times per night. Plaintiff noted that her lower back pain also causes pain and burning in her hips, making it difficult to sleep.

Plaintiff testified that the biggest factors limiting her from working are pain and fatigue. Plaintiff stated that one of her doctors suspects fibromyalgia, but she has not received a tender point examination in order to diagnose it. Plaintiff stated that there are days when she cannot get out of bed. Plaintiff also testified that if she forgets to take her blood pressure

medication, the blood vessels in her eyes will burst, which interferes with her vision and causes pain in her eyes and head.

Plaintiff further testified that her mental impairments prevent her from working. Plaintiff lives in a motorhome, and stated that between 2003 and 2007, she was roving around, trying to stay isolated. Plaintiff described that she was diagnosed with bipolar disorder in 2007, and that she had a manic phase that lasted for a year. Plaintiff noted that her bipolar disorder is currently under control. Plaintiff testified that she has not attempted to work since 2003 because she has been in pain and agony and takes too many medications. Plaintiff stated that the Klonopin she takes cause fatigue, memory loss, and difficulty concentrating. Plaintiff also testified that due to her lifelong asthma, she cannot climb stairs, and has environmental limitations including being unable to work around chemicals, cleaning products, and perfume, or work in extreme hot or cold temperatures.

In the decision, the ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely credible.

Contrary to plaintiff's assertion, the ALJ provided numerous reasons, citing specific record evidence, which undermine her subjective complaints. To begin, the ALJ found that plaintiff's

complaints of severely debilitating back pain, fatigue and respiratory difficulties were not supported by the objective medical evidence. The ALJ detailed the records of numerous providers to support this finding. When the claimant's own medical record undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. <u>Parra v. Astrue</u>, 481 F.3d 742, 750-51 (9th Cir. 2007); <u>Morgan v. Comm'r Soc. Security Admin.</u>, 169 F.3d 595, 600 (9th Cir. 1999).

For example, the ALJ discussed that plaintiff's alleged onset of disability coincides with a work-place injury, in which plaintiff injured her back while shoveling gravel at a construction site. The ALJ reviewed the medical records from Donald McGee, M.D., Ph.D., the physician who treated plaintiff following her May 2003 injury. As ALJ correctly summarized, Dr. McGee observed that plaintiff had difficulty getting up and down from the examination table, and had a decreased range of motion and tenderness in her low back. Dr. McGee diagnosed a lumbosacral strain, noted that plaintiff did not suffer any permanent disability, and released her back to work that same day with a temporary 10-pound lifting restriction, which was to remain in effect until she returned for a follow up visit on May 28, 2003. Dr. McGee prescribed Flexeril, ibuprofen, and recommended plaintiff use heat and ice to alleviate her back symptoms. Tr. 161-63. The ALJ's assessment of Dr. McGee's records is wholly supported by substantial evidence.

The ALJ detailed plaintiff's complaints of back pain and asthma with providers at Chico Family Health Center in early 2004. On January 27, 2004, Thomas Neuschatz, M.D. examined plaintiff and noted that she complained of chronic back pain, and upon examination her back was a little tender with a little decreased range of motion. Tr. 173. Dr. Neuschatz also noted that plaintiff's knees were tender, with a slight decreased range of motion and he filled out a disability form for a two-week period.

The ALJ discussed plaintiff's next visit with Dr. Neuschatz, who described that plaintiff's chief complaint was her chronic back and leg pain. As the ALJ correctly indicated, Dr. Neuschatz's February 3, 2004 treatment notes reflect that plaintiff became angry during her visit, and demanded that the doctor prescribe prednisone for her bronchitis. Dr. Neuschatz refused, advising plaintiff that she was already taking a strong steroid for her asthma. As the ALJ noted, plaintiff then questioned Dr. Neuschatz's credentials and was very rude to office staff. Tr. 170.

On March 9, 2004, plaintiff saw Robert Roth, M.D., at the Chico clinic. Dr. Roth indicated that plaintiff was no longer being seen by Dr. Neuschatz, and that she was in for her back pain and asthma. Dr. Roth's notes reflect that plaintiff talked rapidly and incessantly, and was interruptive. Dr. Roth noted that plaintiff had wheezes in her chest due to asthma, but that she did

not complain or cough.  Dr. Roth refilled plaintiff's prescription
for baclofen for her back pain, and was waiting for medical records
concerning her "supposedly" disabling back condition.  As the ALJ
noted, plaintiff indicated to Dr. Roth that she had moved
frequently between California, Washington, and Arizona in the
previous year.  And, as the ALJ correctly observed, Dr. Roth
thought plaintiff was "pretty animated" for someone who was
allegedly disabled.  Tr. 168-69.  The ALJ's summary of the records
from the Chico clinic are supported by substantial evidence in the
record.

The ALJ also detailed records from Shasta Community Health
Center where plaintiff received treatment in March of 2005.  The
ALJ noted that plaintiff was seeking a general examination and
physical.  As the ALJ correctly detailed, plaintiff became verbally
abusive toward staff, as reflected in the treatment notes of Ann
Murphy, M.D.  Dr. Murphy described that plaintiff became hostile
and approached her in a threatening manner, and when plaintiff
refused to leave, Dr. Murphy telephoned police.  As the ALJ
correctly noted, plaintiff sought urgent care treatment on March
25, 2005, for her asthma.  Plaintiff was seen by Joe Villalobos,
M.D., whose notes reflect that she was complaining of wheezing,
shortness of breath, and congestion.  Upon examination, Dr.
Villalobos noted that plaintiff was not in any respiratory

distress, was given a prescription for antibiotics and a prednisone burst.

The ALJ detailed that on April 11, 2005, Shasta Community Health Center discharged plaintiff from their care for all non-emergency treatment. The records reflect that plaintiff arrived wanting disability paperwork to be filled out, and that plaintiff lost her temper with Dr. Murphy and a staff person, and that Dr. Murphy would not see plaintiff at the mobile clinic. Tr. 205-07.

The ALJ discussed an evaluation by Joseph M. Garfinkle, M.D., who performed a physical evaluation of plaintiff. As the ALJ correctly summarized, plaintiff's range of motion in her knees was grossly normal. Furthermore, Dr. Garfinkle's testing of plaintiff's breath sounds were symmetric, with no ronchi or rales, and her expiratory phase was within normal limits. Tr. 219. Dr. Garfinkle concluded that plaintiff could lift or carry 50 pounds occassionally, and 25 pounds frequently, could stand or walk six hours in an eight hour day, and can sit for six hours in an eight hour day. Tr. 221.

Given the lack of objective medical findings concerning plaintiff's back and knee pain, and fatigue, I conclude that the ALJ's determination to discredit plaintiff on this basis is supported by substantial evidence. Moreover, as the ALJ correctly indicated, there is a complete absence of *any* objective medical

evidence supporting a diagnosis of tendonitis in plaintiff's thumbs.

In short, the ALJ's conclusion that the objective medical evidence was "relatively benign," is supported by substantial evidence in the record, and the ALJ could discredit claimant on this basis. Parra, 481 F.3d at 750-51; Carmickle, 533 F.3d at 1161 (contradiction between claimant and medical record is a sufficient reason to reject subjective testimony).

Additionally, the ALJ specifically discredited claimant on the basis of statements she provided to health care providers which were inconsistent with her hearing testimony. For example, the ALJ cited a November 9, 2009 emergency room record where plaintiff sought treatment for an anxiety attack. Tr. 417. As the ALJ correctly summarized, the treatment notation from Sagar Bedi, M.D. indicates that plaintiff described "working out in the sun today lifting heavy stuff" and then becoming short of breath. Id. As the ALJ found, plaintiff's description of her activities to Dr. Bedi directly contradicts her hearing testimony that she was limited to lifting five pounds. Moreover, during that emergency room visit, plaintiff denied using drugs, but at the hearing, plaintiff admitted to smoking marijuana occasionally. The inconsistencies are supported by substantial evidence in the record, and the ALJ appropriately relied upon them to discredit claimant. See Berry v. Astrue, 622 F.3d 1228, 1235 (9th Cir.

2010)(inconsistencies between self-reported symptoms and activities supported adverse credibility finding).

The ALJ also discredited plaintiff on the basis of her "threatening and intimidating behavior." As discussed above, plaintiff displayed aggressive behavior towards Dr. Neuschatz and staff in 2004, and again at Dr. Murphy and staff in 2005.

Plaintiff now contends that her anger, hostility, and over-talkativeness are symptoms of her hypomanic bipolar disorder and that the ALJ should not have discounted her credibility on this basis. Plaintiff points to a record Dr. Neuschatz, who noted that her argumentative behavior might be indicative of bipolar disorder. Tr. 171.

Even if I were to agree with plaintiff, the record also supports the conclusion reached by the ALJ. For example, the ALJ discussed Dr. Shields' evaluation at length. Dr. Shields indicated that plaintiff's poor impulse control and belligerence (which the ALJ interpreted as referring to plaintiff's argumentative behavior towards providers) indicated cluster B personality disorder, and that plaintiff denied those symptoms when asked. Tr. 381. Dr. Shields provided a rule-out diagnosis of Personality Disorder with cluster B features. Tr. 382.

The ALJ also detailed a January 7, 2007 statement she made to Beverly Christianson, a Licensed Social Worker. Ms. Christianson's notes reflect that she saw plaintiff one time, and observed that

17 - OPINION AND ORDER

plaintiff "makes it clear that she does not want to work, likes her roaming lifestyle, [and] has no intention of staying once she gets her social security." Tr. 342.  When asked about the statement to Ms. Christiansen at the hearing, plaintiff responded that she was misquoted.  The ALJ took plaintiff's response into consideration, but credited Ms. Christianson, providing the following explanation:

> When combined with evidence of manipulative behavior toward treatment providers, relatively benign objective medical findings, and medical opinions such as that recently expressed by Dr. Shields regarding her poor motivation to return to work, the undersigned tends to find the counselor's January 2007 statement credible. Tr. 22.

Based upon my careful consideration of the record, I conclude that even if the record could support the inference that plaintiff now suggests, the ALJ's interpretation is a rational one.  Where the record supports the conclusion drawn by the ALJ, this court may not second-guess it.  Parra, 481 F.3d at 746.  In summary, I conclude that the ALJ has provided clear and convincing reasons to support the adverse credibility determination.  See Carmickle, 533 F.3d at 1162; Batson, 359 F.3d at 1197.

### III. Physician's Opinion

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir.

1989).  If a treating or examining doctor's opinion is contradicted
by another doctor's opinion, it may be rejected by specific and
legitimate reasons.  Bayliss, 427 F.3d at 1216.  An ALJ can meet
this burden by providing a detailed summary of the facts and
conflicting medical evidence, stating his own interpretation of
that evidence, and making findings.  Tommasetti, 533 F.3d at 1041;
Carmickle, 533 F.3d at 1164; Magallanes v. Bowen, 881 F.2d 747, 751
(9th Cir. 1989).  When evaluating conflicting opinions, an ALJ is
not required to accept an opinion that is not supported by clinical
findings, or is brief or conclusory.  Bray v. Comm'r of Soc. Sec.
Admin., 554 F.3d 1219, 1228 (9th Cir. 2009); Magallanes, 881 F.2d
at 751.  An ALJ also may discount a physician's opinion that is
based on a claimant's discredited subjective complaints.
Tommasetti, 533 F.3d at 1040.

        The court is mindful of the deference that his typically
accorded treating physicians.  See Orn v. Astrue, 495 F.3d 625, 632
(9th Cir. 2007).  However, where a treating physician's opinion of
complete disability is undercut by the physician's own contemporary
medical records, the ALJ is not required to give that opinion
controlling weight.

        Plaintiff argues that the ALJ was required to give the
opinions of her treating psychiatrist, Ronald Bortman, M.D.,
controlling weight.  Plaintiff maintains that Dr. Bortman's
opinions are consistent with the findings of Dr. Bedi, and that the

ALJ's reasons for rejecting Dr. Bortman's opinions were not clear and convincing. I disagree.

Dr. Bortman opined in a single-page California Department of Social Services form on November 19, 2007, that plaintiff is "barely able to complete ADLs [activities of daily living]." Tr. 375. On December 25, 2008, Dr. Bortman completed a second form, indicating that plaintiff is secluded, but "can do ADLs," is irritable, has poor concentration and task completion, and opined that plaintiff is unable to "sustain attention for full or part time work." Tr. 373.

The ALJ discounted Dr. Bortman's opinions because they were grossly inconsistent with his subsequent treatment notes. As the ALJ correctly indicated, Dr. Bortman's November 19, 2007 opinion that plaintiff is "barely able to complete ADL's" is wholly inconsistent with his December 31, 2007 treatment note that plaintiff has no significant difficulties, stating that plaintiff is living in her motor home in the country.[1] Tr. 370. The ALJ also accurately noted that Dr. Bortman's notes reflect that in January of 2008, plaintiff stated that she was continuing to feel better on Abilify, her sleeping had improved, and she was just a "little down." As the ALJ noted, at that time, Dr. Bortman

_____

[1] I note that the record does not reflect any treatment notes from Dr. Bortman predating his November 19, 2007 opinion.

indicated that her bipolar disorder was partially controlled.  Tr. 369.

Plaintiff complains that Dr. Bortman's subsequent notes indicate that plaintiff remained irritable, tearful and distracted, and that therefore his notes were not inconsistent with his opinion as found by the ALJ.  Plaintiff's contention is undercut by Dr. Bortman's records.  To be sure, the 2008 notes reflecting plaintiff's irritability and tearfulness can be attributed to periods where plaintiff was not taking her medication.  Indeed, Dr. Bortman's treatment records show an eight month gap in treatment between January and November of 2008, and that plaintiff had not been taking her medication for several months.  Tr. 359.  Plaintiff next returned to see Dr. Bortman in October of 2009, after a year-long absence.  Tr. 442.  Dr. Bortman's records reflect that plaintiff had been off medication for several months "because she did not keep her appointments."  Id.  Dr. Bortman's notes indicate that plaintiff previously had good results with Abilify and an antidepressant, and that plaintiff was restarted on those medications.  Id.  Thus, contrary to plaintiff suggestion, Dr. Bortman's treatment notes reflect improvement when plaintiff takes her medication, including less depression and decreased mood swings.  Tr. 440.  Therefore, I conclude that the ALJ's rejection of Dr. Bortman's 2007 opinion is wholly supported by the record.

Plaintiff contends that Dr. Bortman's opinion is consistent with Dr. Bedi, and therefore the ALJ was required to provide clear and convincing reasons to reject it. According to plaintiff, Dr. Bedi's treatment notes establish that she did not feel better after January of 2008.

On November 2, 2009, plaintiff sought emergency room treatment for what she believed was a panic attack. Tr. 417. Plaintiff reported feeling short of breath, coughing, and that her heart was racing. Tr. 417. As the ALJ correctly noted, plaintiff reported that she was out in the sun lifting heavy stuff when her symptoms began. Dr. Bedi noted that plaintiff has asthma and is a smoker. Dr. Bedi treated plaintiff with a DuoNeb nebulizer, which made her feel "tremendously better," and his primary diagnosis was bronchitis. Id. In February and March of 2010, plaintiff again was seen by Dr. Bedi in the emergency room for her complaints of severe anxiety. Dr. Bedi prescribed Klonopin and asked that plaintiff restart her Abilify. Tr. 387 and 401. While plaintiff may have experienced anxiety, Dr. Bedi did not opine that plaintiff was incapable of performing her ADL's, or had difficulty sustaining concentration. Thus, Dr. Bedi did not offer an opinion consistent with Dr. Bortman.

Moreover, Dr. Bortman's opinion was contradicted by Dr. Shields. Dr. Shields conducted a psychodiagnostic examination on January 6, 2010. As the ALJ discussed, Dr. Shields diagnosed

22 - OPINION AND ORDER

bipolar disorder, and suspected a personality disorder. The ALJ noted that Dr. Shields found plaintiff to be fairly pleasant and generally cooperative, with minimal pain behavior. As the ALJ indicated, Dr. Shields detected no significant areas of impairment in attention, concentration or memory, and that plaintiff was able to persist psychologically throughout the evaluation. The ALJ gave Dr. Shields' opinion "great weight." As the ALJ correctly indicated, Dr. Shields' opinion is based upon objective testing and was consistent with the record as a whole.

In sum, Dr. Bortman's opinions that plaintiff could not perform her ADLs and lacked concentration, and could not perform full time work were not uncontroverted, and the ALJ adequately detailed the facts and conflicting medical evidence and offered findings. Tommasetti, 533 F.3d at 1041. I conclude that the ALJ has provided clear, substantial and legitimate reasons for crediting the opinion of Dr. Shields over those of Dr. Bortman, which are backed by substantial evidence in the record.[2] I find no error in the ALJ's treatment of the treating physician's opinions.

---

[2]I note that plaintiff's alleged lack of concentration is undercut by the lay testimony of Jason Isom. In his 2005 report, Mr. Isom noted that plaintiff has no difficulty with memory or social functioning, and can concentrate "forever." Plaintiff does not challenge the ALJ's assessment of the lay testimony. Tr. 129-36.

I also reject plaintiff's argument that the ALJ erroneously interpreted the medical evidence concerning her alleged knee impairment.  The ALJ throughly discussed the medical evidence, including an assessment by Dr. Garfinkle who determined that plaintiff had a full range of motion in all extremities.  Moreover, there is no diagnostic imaging in the record to support her contention of knee arthritis.  Although plaintiff now complains that the ALJ should have further developed the record, the record was not so ambiguous as to preclude a disability determination. Additionally, the ALJ interpreted the existing evidence in the light most favorable to plaintiff, as is indicated in the RFC requirement that plaintiff be permitted to stand and sit at will.

## IV.  **Step Three**

At Step Three, the ALJ concluded that plaintiff did not present medical evidence to meet or equal Listings 1.04 (disorders of the spine), 3.03 (asthma), 12.04 (affective disorders), or any other Listing.  The record demonstrates that the ALJ thoroughly discussed the medical evidence at Step Three and again when evaluating plaintiff's RFC.

In her briefing to this court, plaintiff contends that the ALJ erred in failing to find that she meets Listing 12.04 at Step Three, relying on Dr. Bortman's 2007 and 2008 opinions.  As discussed above, the ALJ's rejection of Dr. Bortman's opinions is supported by substantial evidence and free of legal error.

Accordingly, I find no error in the ALJ's Step Three analysis. <u>Burch</u>, 400 F.3d at 683; <u>Lewis v. Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001).

## V.    <u>VE Testimony</u>

In assessing the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe. SSR 96-8p. The RFC need only include limitations found on the record. <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1164-65 (9th Cir. 2001). As such, the ALJ must pose a hypothetical to the vocational expert (VE) that includes all of the limitations deemed to be credible and consistent with the medical evidence in the record.

Plaintiff submits that the ALJ's RFC failed to adequately account for her "profound inability to get along with others" and consequently the hypothetical to the VE was incomplete, and the VE's testimony was invalid. I disagree.

As thoroughly discussed above, the ALJ considered plaintiff's demonstrated hostility toward her treatment providers as evidence of manipulation, and discredited plaintiff on that basis. The ALJ also credited the opinion of Dr. Shields who found that plaintiff was cooperative and fairly pleasant and rated her impairments as only mildly affecting her ability to interact with the public, supervisors and co-workers. Tr. 380, 384. Additionally, the ALJ credited the lay testimony of Jason Isom who noted that plaintiff had no difficulty getting along with family, friends, neighbors, or

25 - OPINION AND ORDER

authority figures, a finding plaintiff does not challenge.  I have concluded that the ALJ did not err in evaluating plaintiff's credibility, or in evaluating the medical evidence.

Based on these findings, which are supported by substantial evidence in the record, the ALJ could discount plaintiff's complaints of impaired social functioning.  At the hearing, the VE testified that plaintiff could perform the jobs identified with mild impairments in her ability to interact with the public.  Tr. 485.  Therefore, because the hypothetical posed to the VE included all of those limitations which the ALJ deemed to be credible and consistent with the medical evidence, the ALJ could reasonably rely upon the VE's testimony.  Stubbs-Danielson, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is AFFIRMED.   This action is DISMISSED.

IT IS SO ORDERED.

DATED this __4__ day of APRIL, 2013

Malcolm F. Marsh
Malcolm F. Marsh
United States District Judge

26 - OPINION AND ORDER